[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Paul Kroll, is suing his chiropractor, James Pasciolla, D.C., for $384, based on his claim that the defendant agreed to compromise his fee for services rendered and then reneged on that promise. Specifically, the plaintiff claims that the defendant accepted a larger sum from the plaintiff's insurance carrier and then refused to forward the overage to him. The plaintiff also alleges fraud and seeks damages under the Connecticut Unfair Trade Practices Act (CUTPA) General Statutes § 42-110a, et seq. The defendant has counterclaimed, seeking that portion of his bill for services rendered that was not reimbursed by insurance and which he now claims that the plaintiff owes to him.
Many of the facts in this case are not in dispute. The plaintiff was injured in an automobile accident and sought treatment from the defendant. In his intake paperwork, the plaintiff indicated no available insurance coverage.[1] In fact, however, and although he did not realize it at the time, he was eligible for no-fault coverage under the insurance policy of his wife's parents, with whom he was then residing.
At some point during the month of January, 1995, the plaintiff had an opportunity to settle his accident case. In consultation with his attorney, James McCann, he concluded that the only way that the settlement offer available to him would be acceptable would be if Dr. Pasciolla compromised his fee, which was $4,350, plus $175 in report fees and an additional $105 charge for missed visits, for a total of $4,630. The parties agree that at some point that month, the defendant agreed to accept $3500 as a full and complete settlement payment, with the understanding that McCann was also cutting his fee by $1000, in order to produce a net settlement of the accident case palatable CT Page 944 to the plaintiff. Based on this agreement with the defendant, the plaintiff then settled his accident case.
At this point the factual situation becomes more murky. The plaintiff and McCann claim that this understanding with the defendant was reached on January 28, 1995, a Saturday. The defendant claims that this understanding was reached on January 10, a Tuesday. The significance of this discrepancy is it is undisputed that on some date in between these two dates, McCann learned that his client was in fact eligible for coverage under his in-laws' policy and notified the defendant of this fact sometime between January 12 and 24. The defendant shortly thereafter submitted his bill to this insurer and received the sum of $3,854 on January 31, 1995.
After Attorney McCann had received confirmation of the insurance payment to the defendant, he wrote to the defendant on February 2, making reference to the January 28 conversation and requesting that the $354 overage be forwarded to him as trustee. The following day, Pasciolla, ignoring McCann's reference to the conversation's having occurred on January 28, rather than January 10, simply stated that "in light of the fact that we are now dealing with insurance, all other arrangements are null and void."
Thus, the plaintiff claims that he is owed $354, the difference between the $3,854 actually received by the defendant and the $3500 which he agreed to accept as full payment. The defendant, on the other hand, claims that he is due $776, representing the difference between what he actually received from the insurer and the total amount of his bill.
Because McCann notified the defendant of the availability of insurance no later than January 24, 1995, it is apparent that, if the conversation in question in fact occurred on January 28, 1995, the $3500 arrangement could not have been predicated on the belief that there was no insurance available to the plaintiff. If, however, the settlement discussion occurred, as the defendant testified, on January 10, then notification of the availability of insurance might well have caused the defendant to rethink his position. His having not done so until after the plaintiff had agreed to settled his own accident claim and after the insurance company's payment was in hand, however, tends to weaken his position, especially in light of the fact that he did not challenge McCann's February 2 written reference to a January 28 CT Page 945 agreement.
Unfortunately, there is little if any extrinsic evidence upon which to determine with certainty where the truth lies. Neither the plaintiff, the defendant nor McCann kept notes regarding their conversations. Had they done so, this litigation might not have been necessary. In their absence, this court is left with the task of sorting out the facts on the basis of the surrounding circumstances. The plaintiff has the advantage of his claim that he listened on the speakerphone as his attorney discussed the $3500 with the defendant on January 28. In addition, McCann's February 2 letter, directly citing January 28 as the date of the agreement, was not challenged by the defendant in his February 3 written response.
Although the burden of proof on this point is on the plaintiff, he need only satisfy that burden by establishing that it is more probable than not that the conversation occurred on January 28, and, by that slim margin, he has done so. It is altogether conceivable, moreover, that with the newly available evidence of insurance still not providing a guarantee of coverage and with the prospect of an immediate settlement at least guaranteeing the defendant a payment of $3500 of his fee, such an arrangement, even if entered into after learning of possible insurance coverage, would not have been an unreasonable one for the defendant to have undertaken.
The defendant's defense and counterclaim were in part predicated on his claim that the plaintiff signed an agreement with the defendant instructing his attorney to pay "the balance of any charges" incurred in connection with his treatment. Indeed, he also established that McCann, in writing, agreed to "protect [the defendant's] interests on any balance due". He therefore argues that any oral agreement between the plaintiff and defendant to pay a reduced fee was not binding.
No written contract between the plaintiff and the defendant was introduced into evidence, however. The only writings relating to fees are a form entitled "Irrevocable Instructions to Attorney to Pay Doctor", signed by the plaintiff, and McCann's letter of protection. There was thus no written contract between the parties themselves with respect to which the agreement for reduction of fees would represent an improper oral novation.
The same facts that enabled the plaintiff to sustain his CT Page 946 burden of proof with respect to the first count also prevent the defendant from sustaining his burden with respect to the counterclaim. As to the remaining counts of the plaintiff's complaint, no credible testimony has been introduced suggesting that the defendant acted fraudulently or that he violated the Connecticut Unfair Trade Practices Act.
Therefore, judgment will enter in favor of the plaintiff as to count one of his complaint in the amount of $354 plus costs. Judgment will enter in favor of the defendant with respect to counts two and three of the complaint and in favor of the plaintiff with respect to the defendant's counterclaim.
Jonathan E. Silbert, Judge